UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLAGSTAR BANK, FSB,

    Plaintiff,

v.

JOHN DANA WOUDENBERG, SPECTRE INVESTORS, LLC, and INTERCOASTAL FINANCIAL GROUP, INC.,

    Defendants.

Case No. 09-13437

HON. MARIANNE O. BATTANI

_____

INTERCOASTAL FINANCIAL GROUP, INC.,

    Cross-Plaintiff/Third-Party Plaintiff,

v.

JOHN DANA WOUDENBERG, and SPECTRE INVESTORS, LLC,

    Cross-Defendants,

and

SPECTRE POWERBOATS, INC., and SCOTT CONRAD,

    Third-Party Defendants.

_____/

**OPINION AND ORDER DENYING WOUDENBERG'S AND SPECTRE INVESTORS, LLC'S MOTIONS TO DISMISS AND GRANTING IN PART AND DENYING IN PART FLAGSTAR'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Flagstar Bank ("Flagstar") alleges in its complaint that Intercoastal Financial Group ("Intercoastal") brokered a loan from Flagstar to Dana Woudenberg and Spectre Investors, and that the loan was obtained by fraud.  Intercoastal subsequently filed cross-claims against Spectre Investors and Woudenberg, and third-party claims against Spectre Powerboats and Scot Conrad.

Now before the Court are (1) Defendant/Cross-Defendant Woudenberg's Motion to Dismiss Flagstar's Complaint for Lack of Personal Jurisdiction, (doc. 14); (2) Woudenberg's Motion to Dismiss Intercoastal's Cross-Complaint for Lack of Personal Jurisdiction, (doc. 24); (3) Defendant/Cross-Defendant Spectre Investors' Motion to Dismiss Flagstar's Complaint for Lack of Personal Jurisdiction, (doc. 26); (4) Spectre Investors' Motion to Dismiss Intercoastal's Cross-Complaint for Lack of Personal Jurisdiction, (doc. 27); and (5) Plaintiff Flagstar Bank's Motion for Summary Judgment against Defendant Woudenberg, (doc. 29).  For the reasons that follow, the Court denies Woudenberg and Spectre Investors' four Motions to Dismiss and grants in part and denies in part Flagstar's Motion for Summary Judgment.

**II.    STATEMENT OF FACTS**

According to Flagstar's complaint, Intercoastal is a non-exclusive broker for Flagstar.  (Doc. 1).  Intercoastal brokered a March 11, 2008, loan from Flagstar to Woudenberg, an Arizona resident, and Spectre Investors, an Arizona corporation.  This money was to be used to purchase a racing boat from Spectre Powerboats in California ("the Boat").  A First Preferred Ship Mortgage for the Boat was executed in favor of

Flagstar. In addition, Woudenberg and Spectre Investors signed a Collateral Delivery Receipt in which they affirmed that "the collateral has been delivered and is in satisfactory condition." Subsequently, Flagstar discovered that the Boat had never been built.

Flagstar attached to its complaint a California state court complaint filed by "The Smith Family Real Estate Investors Limited Partnership, LLLP" against, among others, Woudenberg, Flagstar, Spectre Powerboats, and Spectre Investors. In that complaint, the plaintiff contends that it entered into a number of Promissory Notes and Security Agreements with, among others, Conrad and Spectre Powerboats. One of the forms of relief that the plaintiff seeks is a declaration that it possesses right, title, and/or interest in the Boat over which Woudenberg, Spectre Investors, and Flagstar also claim an interest.

According to Intercoastal's cross-complaint, its agreement with Flagstar called for it to originate, process, underwrite, close secured loans, and offer loan applications to Flagstar, which Flagstar could then agree to accept, underwrite, approve, close, and fund. (Doc. 12). Spectre Investors and Woudenberg asked Intercoastal to procure financing for the purchase of the Boat. Intercoastal requested certain financial information from Woudenberg and Spectre Investors and subsequently forwarded it to Flagstar. Flagstar then approved the loan and distributed money pursuant to a note.

In an affidavit from Woudenberg, he states that Conrad approached him and requested $450,000 in financial assistance to build a power boat from a previously constructed boat hull. (Doc. 49, exh. B). Conrad told him that, once built, the Boat would be sold with the profits of the sale being split. Woudenberg stated that he was

3

willing to offer financial assistance if, in order to allocate the financial risk, a corporation was formed with one or two other creditworthy individuals.  Spectre Investors, an Arizona was subsequently created by Conrad, Woudenberg, and Mike DeLoach, a friend of Conrad's, as an Arizona limited liability company.  The sole purpose of Spectre Investors was to obtain the $450,000 loan needed to complete construction of the Boat.

Woudenberg's affidavit goes on to state that Conrad coordinated the required loan through Calder McNab, Conrad's friend and an employee of Intercoastal in California.  Woudenberg received the loan application documents from McNab in March 2008 with instructions that he should sign the documents on behalf of Spectre Investors and in his personal capacity.  McNab explained that Conrad and DeLoach would also sign the loan documents once Woudenberg returned them.  Woudenberg signed the documents and returned them to McNab in California, but Conrad and DeLoach never signed the documents.  The loan was subsequently approved, and the loan proceeds were paid directly to Conrad.  Throughout the loan application process, McNab was aware that the Boat was under construction, and Woudenberg believed that McNab and Intercoastal were acting as agents of Flagstar.  Woudenberg also states in this affidavit that he had no direct contact with Michigan throughout the loan application process.  Conrad subsequently used some of the loan proceeds for his personal use without Woudenberg's knowledge or consent.

It appears that Conrad stopped making payments on the loan at some point in time, and Woudenberg began personally keeping the loan paid up by making payments to Flagstar.

4

## III. STANDARD OF REVIEW

A motion to dismiss for lack of personal jurisdiction leaves the Court with three options: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). Regardless of how the court proceeds, the plaintiff always bears the burden of establishing that jurisdiction exists. Id. "Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." Id.

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).

## IV. ANALYSIS

The Court will first address the four motions to dismiss for lack of personal jurisdiction from Woudenberg and Spectre Investors. As these motions present virtually

5

identical arguments, they will be addressed together.  The Court will then address
Flagstar's Motion for Summary Judgment.

       *1.      Personal Jurisdiction over Woudenberg and Spectre Investors*

"Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Air Products and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (alteration omitted) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  A court sitting in diversity will only have personal jurisdiction over a defendant if the law of the forum state authorizes jurisdiction and the exercise of jurisdiction comports with Due Process.

Michigan's long-arm statute provides for jurisdiction up to the limits permitted by due process so long as the defendant's actions or status fit within the long-arm statute. Green v. Wilson, 455 Mich. 342, 350 (1997).  Michigan's long-arm statute states that either the transaction of any business within the state or the doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort will give rise to specific jurisdiction.  MICH. COMP. LAWS §§ 600.705 and 600.715.

The Due Process Clause permits the exercise of both general and specific personal jurisdiction.  City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 665 (6th Cir. 2005).  None of the parties contend that the Court has general jurisdiction over Spectre Investors and Woudenberg.  Specific jurisdiction exists if the following three-part test is satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

i. Michigan's Long-Arm Statute

As just stated, Michigan's long-arm statute grants specific jurisdiction when any business is transacted, any act is done, or any consequences are caused within the state resulting in an action for tort. See MICH. COMP. LAWS §§ 600.705 and 600.715. The Michigan Court of Appeals has found that to transact business is to carry or conduct business to a conclusion or settlement. Oberlies v. Searchmont Resort, Inc., 246 Mich. App. 424, 430 (2001). The court went on to state, "Our Legislature's use of the word 'any' to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction." Id. (citing Sifers v. Horen, 385 Mich. 195, 199, n.2 (1971) (stating that M.C.L. § 600.715(1)'s use of the word "any" refers to "each" and "every" business transaction and contemplates even "the slightest" act of business in Michigan), and Viches v. MLT, Inc., 127 F.Supp.2d 828, 830 (E.D. Mich. 2000) ("The standard for deciding whether a party has transacted any business under § 600.715(1) is extraordinarily easy to meet. The only real limitation placed on this long arm statute is the due process clause." (quotation and alteration omitted))).

7

As Woudenberg and Spectre Investors sought and obtained a loan from a Michigan-based bank, they transacted business within the state, and Michigan's long-arm statute permits the exercise of specific jurisdiction. Therefore, it is necessary to determine whether the exercise of specific jurisdiction is also permitted by the Due Process Clause.

      ii.      Due Process

           a.      Did Woudenberg and Spectre Investors Purposefully Avail Themselves of the Privilege of Acting in Michigan?

"Th[e] purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations and quotations omitted). Accordingly, this requirement ensures that the defendant's contacts with the forum state "are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The Sixth Circuit has stated that the mere existence of a contract between the defendant and a citizen of the forum state is insufficient to confer specific personal jurisdiction. Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000). But, where a defendant creates a "substantial connection" with the forum state, jurisdiction is proper. Burger King Corp., 471 U.S. at 475 (citing McGee v. Int'l Life Insurance Co., 355 U.S. 220, 223 (1957)).

After review of the case, the Court finds that Woudenberg and Spectre Investors (acting through Woudenberg) purposefully availed themselves of the privilege of acting

8

in Michigan. Their substantial connection to Michigan is evidenced most clearly by the fact that they applied for, and obtained, a $450,000 loan from a Michigan bank. Furthermore, this relationship between the parties was to be relatively long lasting because the loan was to be paid off over 12 years.

Although Spectre Investors and Woudenberg correctly note that they had no direct contact with Michigan during the application process because they only dealt with Intercoastal, the note clearly indicated the loan's substantial connection to Michigan. In particular, the Marine Consumer Note prominently stated that the lending bank was Flagstar in Michigan. In addition, the note indicated that payment was to be sent to Flagstar in Michigan. Finally, the note stipulated that the application for the loan, the making of the loan, and the disbursement of all proceeds were made in Michigan and that the note was to be governed by federal law and the law of Michigan. Cf. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (stating that "parties who reach out beyond one state and create continuing relationships and obligations with citizen of another state are subject to regulation and sanctions in the other State for the consequences of their activities" (quotation omitted)).

Woudenberg and Spectre Investors dispute that the loan was actually disbursed in Michigan in light of the fact that the money loan was received in California. But, the loan was disbursed from a Michigan bank and although the money was received in California, the note's language nevertheless provides support for the contention that the agreement had a substantial connection with Michigan. Accordingly, the Court finds that Woudenberg and Spectre Investors purposefully availed themselves of the privilege of acting in Michigan.

### b. Does the Cause of Action Arise from the Michigan Contacts?

As the cause of action arises out of the loan agreement with Flagstar, the cause of action does arise out of Woudenberg's and Spectre Investor's Michigan contacts.

### c. Is the exercise of jurisdiction reasonable?

The Court finds that Woudenberg's and Spectre Investors' contacts with Michigan were substantial enough to make the exercise of jurisdiction reasonable as this was a substantial loan from Michigan bank that was to be paid over 12 years. See S. Mach. Co., 401 F.2d at 381. The Court notes that an inference of reasonableness arises when the first two due process criteria are met such that "only the unusual case will not meet this third criteria." See Theunissen v. Matthews, 935 F.2d 1454, 1461 (6th Cir. 1991).

Woudenberg and Spectre Investors argue that the exercise of jurisdiction would be unreasonable because it is more burdensome to litigate this case in Michigan, as opposed to California – where Intercoastal and Spectre Powerboats are located and which is near to Arizona, the home of Spectre Investors and Woudenberg. They also contend that Flagstar's and Intercoastal's rights could be asserted in the California state suit that is currently proceeding.

As an initial matter, the Court does not find persuasive the argument that the burden of litigating this case will be significantly greater in Michigan as the facts of the case are largely undisputed. Furthermore, the fact that Flagstar and Intercoastal might be able to assert their rights in another forum does not, in and of itself, make the

exercise of personal jurisdiction in this forum unreasonable. As such, the Court finds that this is not the type of unusual case where the exercise of personal jurisdiction is so unreasonable that it would violate due process. See id. Accordingly, the Court finds that it has specific personal jurisdiction over Woudenberg and Spectre Investers. Therefore, the four motions to dismiss for lack of personal jurisdiction over Spectre Investors and Woudenberg are denied.

### 2. *Flagstar's Motion for Summary Judgment*

Flagstar argues that it is entitled to summary judgment against Woudenberg as to its claims of breach of contract and acceleration of the debt (Count 1); common-law fraud (Count 3); negligent misrepresentation (Count 4); and silent fraud (Count 5). In particular, Flagstar contends that Woudenberg's admission that the Boat was not built when he obtained the loan from Flagstar shows that it is entitled to summary judgment on these counts.

Woudenberg responds that summary judgment is inappropriate because (1) he was not actually a borrower on the loan, as only Spectre Investors owned the Boat; (2) Flagstar knew the Boat was not completed through its agent, Intercoastal; (3) it is not clear whether the loan agreement related to a completed boat, such that Woudenberg misrepresented that the Boat was completed by signing the agreement and obtained the loan; and (4) Flagstar cannot maintain separate torts for causes of action that are really only breaches of contract. Woudenberg also asserts that he needs additional discovery to oppose Flagstar's Motion for Summary Judgment, but after review of the motion, the Court finds that additional discovery is not necessary.

11

As an initial matter, the Court finds that Woudenberg was a borrower on the loan agreement. Woudenberg signed the Marine Consumer Note twice: once as a member of Spectre Investors, and once as an individual. Woudenberg contended at oral argument that there was some ambiguity because he only signed the First Preferred Ship Mortgage as a member of Spectre Investors, not as an individual. The fact that he only signed the mortgage as a member of Spectre Investors, however, simply means that it was only Spectre Investors that granted the bank a security interest in the Boat. This is a separate question from who was a borrower on the loan. Thus, in light of the fact that Woudenberg signed the Marine Consumer Note both as a member of Spectre Investors and as an individual, the Court finds that he was a borrower on the loan.

Woudenberg's argument that the Court should impute knowledge that the Boat was unbuilt to Flagstar because Intercoastal was Flagstar's agent fails because the evidence shows that Intercoastal was not Flagstar's agent. Agency is defined as "a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by actions or words." Breighner v. Michigan High School Athletic Ass'n, 255 Mich. App. 567, 582-83 (2003). The evidence in this case indicates that Intercoastal was not the agent of Flagstar. In particular, the brokerage agreement between the parties reserved for Flagstar the sole discretion in approving or rejecting submitted applications and stated that Intercoastal was not to represent to anyone that it was "the agent, representative, partner, or co-venturer of Flagstar, or has the authority to issue commitments for Loans on behalf of Flagstar or to bind or commit Flagstar to any other contract or transaction." (Doc. 48, exh. K); cf. Mills v. Equicredit Corp., 344 F.Supp.2d

1071, 1078 (E.D. Mich. 2004) (finding that a loan broker was not the agent of the lender). As Intercoastal was not Flagstar's agent, Intercoastal's alleged knowledge concerning the Boat cannot be imputed to Flagstar.

Woudenberg contends that he did not breach the loan agreement because he did not provide any false or misleading information to Flagstar when he procured the loan for an unbuilt boat. In particular, he claims that the terms of the Marine Consumer Note did never required that the Boat be completed. A review of the note, however, reveals that although it did not explicitly require a completed boat, it would be unreasonable to read the agreement as contemplating an unbuilt boat. As an initial matter, the note asks for the port or marina where the property is anchored and requires that the property be "properly licensed and registered" within 15 days of the note being signed. Woudenberg has not explained how the unbuilt Boat could have been either anchored, licensed, or registered.

Although Woudenberg is correct that the note never explicitly requires a completed boat, the note also never makes any reference to an unbuilt boat. It is hard to imagine that the parties intended for the loan to cover an unbuilt boat, but never made any reference to this fact in the loan documents despite the fact that much of the note's language indicates that a completed, operating boat was being contemplated. For example, in addition to the aforementioned language concerning the Boat being anchored and licensed and registered, the note also indicates that the person receiving the loan agrees that the property is "in proper operating order and fit for all intended purposes." Furthermore, the note lists a hull identification number for the Boat. At oral argument, Woudenberg and Flagstar agreed that the Coast Guard only assigns such

13

numbers to completed boats, and they stated that they do not know how one could have been assigned to this unbuilt boat. As such, the presence of a hull identification number on the note would certainly, at a minimum, mislead Flagstar as to whether the loan was for the purchase of a completed boat. In light of these considerations, the Court finds that Woudenberg breached the agreement by providing misleading information to Flagstar when he signed the note despite the fact that the boat was unbuilt; no reasonable jury could find otherwise. Accordingly, Flagstar is entitled to summary judgment as to its breach of contract claim against Woudenberg.

Woudenberg argues that Flagstar cannot maintain tort actions for what was really only a breach of contract. In Fulz v. Union-Commerce Assocs., the Michigan Supreme Court indicated that there is a distinction between a defendant's misfeasance (action) and nonfeasance (inaction). 470 Mich. 460, 465 (2004). The court proceeded to note "that a tort action will not lie when based solely on the nonperformance of a contractual duty." Id. at 466. The court defined a "tort action stemming from misfeasance of a contractual obligation as the violation of a legal duty separate and distinct from the contractual obligation." Id. at 467. The Michigan Court of Appeals has held that a fraud in the inducement of a contract is a tort that may survive independently of the contract. See Huron Tool and Eng'g Co. v. Precision Consulting Servs., 209 Mich. App. 365, 374-75 (1995).

In this case, Flagstar has sufficiently alleged fraud in the inducement by claiming that Woudenberg failed to disclose that the Boat was not built. Accordingly, Flagstar may bring these separate tort actions. See id. Nevertheless, Flagstar is not entitled to summary judgment relating to its fraud claims because Woudenberg has stated in his

14

affidavit that Intercoastal knew the Boat was unbuilt and told him this would not present a problem with obtaining the loan from Flagstar. As a fraud claim requires an intent to deceive, there is an issue of material fact relating to whether Woudenberg had any intent to deceive Flagstar. See Roberts v. Saffell, 280 Mich. App. 397, 403-04 (2008).

Similarly, there also is an issue of material fact relating to Flagstar's negligent misrepresentation claim. A claim of negligent misrepresentation requires "proof that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Law Offices of Lawrence J. Stockler, P.C. v. Rose, 174 Mich. App. 14, 30 (1989). Because Woudenberg knew that Intercoastal was aware that the Boat was unbuilt, there is an issue of fact regarding whether Woudenberg acted without reasonable care when he obtained the loan for the unbuilt boat. As such, the Court finds that Flagstar is not entitled to summary judgment as to its claims of fraud, silent fraud, and negligent misrepresentation.

## V.     CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Woudenberg's and Spectre Investors' Motions to Dismiss, (docs. 14, 24, 26, and 27), are **DENIED**, and Flagstar's Motion for Summary Judgment, (doc. 29), is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

                s/Marianne O. Battani
                MARIANNE O. BATTANI
                UNITED STATES DISTRICT JUDGE

DATED: March 17, 2010

## CERTIFICATE OF SERVICE

      Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                s/Bernadette M. Thebolt
                Case Manager